# Illinois Official Reports

## Appellate Court

***Ferris, Thompson, & Zweig, Ltd. v. Esposito*, 2014 IL App (2d) 130129**

| | |
|---|---|
| Appellate Court Caption | FERRIS, THOMPSON, AND ZWEIG, LTD., Plaintiff-Appellee, v. ANTHONY ESPOSITO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0129 |
| Filed | February 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to recover the fees plaintiff law firm was owed pursuant to a referral agreement under which defendant attorney was to represent two workers' compensation claimants before the Workers' Compensation Commission and plaintiff was to perform other services, including document preparation, interviews, and translation services, the trial court properly rejected defendant's contention that the claim should have been filed with the Commission, not in the trial court, and awarded plaintiff 45% of the fees recovered according to the referral agreement, notwithstanding the language of section 16a(J) of the Workers' Compensation Act suggesting that all disputes regarding attorney fees shall be resolved by the Commission, since the statute was referring to the fees of those representing claimants before the Commission, not the breach of a referral agreement such as the agreement at issue in the instant case where plaintiff did not represent the claimant before the Commission, but performed ancillary tasks, not services in connection with the Act. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-SC-622; the Hon. Michael J. Fusz, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Michael D. Furlong, of Trobe, Babowice & Associates, LLC, of Waukegan, for appellant. |
| | Saul M. Ferris, of Ferris, Thompson & Zweig, Ltd., of Gurnee, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices Hudson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff, Ferris, Thompson, & Zweig, Ltd., referred to defendant, Anthony Esposito, two workers' compensation cases. According to the parties' agreement, plaintiff was to receive 45% of all attorney fees recovered in the cases, with defendant receiving the remaining 55%. When the cases were resolved, defendant never paid plaintiff. Accordingly, plaintiff sued defendant in the circuit court for breach of contract. Defendant moved to dismiss, arguing that the claim should have been filed with the Workers' Compensation Commission (Commission) and not in the circuit court. See 735 ILCS 5/2-619(a)(1) (West 2012). The circuit court denied that motion and, following a trial, ordered defendant to pay plaintiff the fees it was owed plus interest. On appeal, defendant argues that the circuit court lacked subject matter jurisdiction over the case. We disagree, and, thus, we affirm.

¶ 2      The following facts are relevant to resolving the issue raised. On February 3, 2012, plaintiff filed its complaint for breach of contract. Plaintiff alleged that it and defendant entered into an agreement whereby "[they] agreed to act as co-counsel in the legal representation of" two women who were injured during their employment. The workers' compensation cases were settled on November 29, 2010, for a total of $4,554.19. When plaintiff asked defendant for its share of the attorney fees, defendant refused to pay plaintiff.

¶ 3      Attached to plaintiff's complaint was the attorney-client agreement plaintiff had with the two women and defendant. According to that agreement, which plaintiff, defendant, and both women signed, both women asserted that they had retained the services of plaintiff and "underst[oo]d and agree[d] that [plaintiff] ha[d] contracted with [defendant] to pursue this workers' compensation claim on [the women's] behalf." The women further stated that they

- 2 -

understood and agreed that plaintiff would have various responsibilities and receive a portion of any attorney fees. In that regard, the agreement provided:

"[Plaintiff] shall:

a. Assist [defendant] with initial interviews and document preparation necessary to the [workers' compensation] claim;

b. Be responsible for assisting [defendant] with client contact and communication in the offices of [plaintiff], as the need arises;

c. Provide translation services as the need arises. However, translation services performed outside of the Offices of [plaintiff] will be an expense assessed to the client[s];

d. Represent the client[s] in any third party action. In the event a third party action is initiated as a result of the work-related injury, it is understood that [defendant] will continue representing the client[s] subject to the terms and conditions of the workers' compensation agreement concerning this workers' compensation case;

e. Keep a duplicate file in its office containing any correspondence or filings associated with this claim; and

f. Receive 45% of all attorney's fees recovered from this claim[.]"

¶ 4 The agreement then outlined defendant's various duties and the attorney fees to which he was entitled. Specifically, the agreement stated:

"[Defendant] shall:

a. Be responsible for the preparation of any necessary documents and obtaining all necessary records necessary to the processing of this claim;

b. Represent the client[s] before the Industrial Commission and will conduct any investigation, negotiations, and processing necessary to bring this claim to a conclusion;

c. Forward status reports to [plaintiff], every sixty days or as significant developments occur in connection with the handling of the claim; and

d. Receive 55% of all attorney's fees recovered from this claim, plus reimbursement for the cost advanced by [defendant]."

¶ 5 Also attached to the complaint was a letter defendant wrote to plaintiff after the agreement was executed. In the letter, which both parties signed, defendant asserted that "[the parties] have agreed that this matter has been referred to [defendant's] office and [plaintiff] will also undertake representation of [these] client[s]." Defendant then, in conformity with the agreement, reiterated the duties each party had and the percentage of the attorney fees each party was entitled to recover.

¶ 6 Defendant moved to dismiss, arguing that the circuit court lacked subject matter jurisdiction over the case (see 735 ILCS 5/2-619(a)(1) (West 2012)). Citing section 16a(J) of the Workers' Compensation Act (Act) (820 ILCS 305/16a(J) (West 2012)), defendant claimed that " '[a]ny and all disputes regarding attorney's fees' " had to be " 'heard and determined by the Commission.' " Thus, defendant argued that, because this case concerned a dispute about

attorney fees owed in a workers' compensation case, the matter had to be resolved by the Commission, not the circuit court.

¶ 7 Plaintiff responded, claiming that the action was properly brought in the circuit court. Plaintiff alleged that the circuit court had jurisdiction over the case, because "[t]he determination of the amount of the fees is solely based on the referring of the case from the Plaintiff[ ] to the Defendant." In contrast, plaintiff asserted, "[the] Commission has exclusive subject matter jurisdiction to resolve attorney's fee *disputes relating to the award of attorney fees in the case before the Commission.*" (Emphasis in original.) Because this case concerned the "enforce[ment of] a written contract with respect to referral of a client from one attorney to another," where "Plaintiff[ ] did no work on the workers' compensation claim and never filed any appearance before the Industrial Commission on behalf of the clients," plaintiff argued that defendant's motion to dismiss for lack of subject matter jurisdiction must be denied.

¶ 8 The circuit court denied defendant's motion to dismiss, finding that section 16a(J) of the Act did not apply to this case. Specifically, the court found that plaintiff, which was not active in the workers' compensation cases and never filed a fee petition with the Commission, was merely seeking what was owed to it pursuant to a referral-fee agreement. Defendant moved for an interlocutory appeal, the court denied that motion, and the cause proceeded with a trial. Following that trial, the court awarded plaintiff $4,965.25. This timely appeal followed.

¶ 9 At issue in this appeal is whether defendant's motion to dismiss should have been granted. A motion to dismiss brought pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)) admits the legal sufficiency of the complaint and raises defects, defenses, or other matters that serve to defeat the claim. *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632 (2004). When a circuit court rules on a section 2-619 motion, it may consider the pleadings, depositions, and affidavits filed. *Id.* On appeal from an order granting a section 2-619 motion, we consider whether there exists a genuine issue of material fact that should have precluded the dismissal or, absent such an issue of fact, whether the dismissal was proper as a matter of law. *Id.* We review *de novo* an order granting a section 2-619 motion. See *Hagemann v. Illinois Workers' Compensation Comm'n*, 399 Ill. App. 3d 197, 207 (2010).

¶ 10 Section 2-619(a)(1) of the Code permits the dismissal of a complaint when "the court does not have jurisdiction of the subject matter of the action." 735 ILCS 5/2-619(a)(1) (West 2012). Whether a court has subject matter jurisdiction over a claim is determined by examining the nature of the case and the relief sought. *Cohen*, 347 Ill. App. 3d at 632. Illinois circuit courts are courts of general jurisdiction. *Id.* Thus, they have original jurisdiction over all justiciable controversies except (1) cases over which the federal courts have exclusive jurisdiction, (2) matters committed to administrative tribunals, and (3) those matters that the Illinois Constitution indicates are within the exclusive original jurisdiction of the Illinois Supreme Court. *Id.* at 632-33.

¶ 11 The Commission is an administrative agency. See *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112-13 (1976). Thus, the Commission has the power to do only what the Act authorizes. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989). When the Commission acts outside of what the statute allows, it acts without jurisdiction over the subject matter. See *id.*

¶ 12    Accordingly, because the Commission's authority is governed by the Act, we must examine several provisions of the Act to determine whether the Commission or the circuit court had jurisdiction over this case. In examining these provisions, we are guided by the well-settled rules of statutory construction. Specifically, the primary objective in construing a statute is to ascertain and give effect to the legislature's intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). The best indicator of the legislature's intent is the statutory language, which should be given its plain and ordinary meaning. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216 (2008). When the statutory language is clear and unambiguous, it must be applied as written without resorting to extrinsic aids of construction. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009). Moreover, we will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the legislature's expressed intent. *Id.* at 565-66. "That is not to say, however, that we cannot consider the purpose for enacting the statute." *In re Marriage of Earlywine*, 2012 IL App (2d) 110730, ¶ 18. Rather, we may consider the reason and necessity for the statute and the evils it was intended to remedy, and we will assume that the legislature did not intend an unjust result. *In re Marriage of Rosenbaum-Golden*, 381 Ill. App. 3d 65, 72 (2008). As we review the dismissal of a complaint pursuant to section 2-619 of the Code, we review *de novo* the construction of a statute. *Nelson v. County of Kendall*, 2013 IL App (2d) 120635, ¶ 10.

¶ 13    The provisions of the Act at play in this case are sections 16 and 16a (820 ILCS 305/16, 16a (West 2012)). The relevant portion of section 16 provides:

> "The Commission shall have the power to determine the reasonableness and fix the amount of any fee of compensation charged by any person, including attorneys, physicians, surgeons and hospitals, for any service performed in connection with this Act, or for which payment is to be made under this Act or rendered in securing any right under this Act." 820 ILCS 305/16 (West 2012).

¶ 14    Section 16a of the Act deals exclusively with attorney fees. In addressing that topic, section 16a(A) (820 ILCS 305/16a(A) (West 2012)) articulates what the legislative purpose of the section is. It states:

> "In the establishment or approval of attorney's fees in relation to claims brought under this Act, the Commission shall be guided by *** the legislative intent, hereby declared, to encourage settlement and prompt administrative handling of such claims and thereby reduce expenses to claimants for compensation under this Act." *Id.*

¶ 15    Section 16a(C) (820 ILCS 305/16a(C) (West 2012)) outlines how attorney fees should be set. That is, it states:

> "All attorneys' fees in connection with the initial or original claim for compensation shall be fixed pursuant to a written contract on forms prescribed by the Commission between the attorney and the employee or his dependents, and every attorney, whether the disposition of the original claim is by agreement, settlement, award, judgment or otherwise, shall file his contract with the Chairman of the Commission who shall approve the contract only if it is in accordance with all provisions of this Section." *Id.*

¶ 16    Section 16a(J) of the Act dictates how disputes regarding fees are handled. Specifically, it provides:

"Any and all disputes regarding attorneys' fees, whether such disputes relate to which one or more attorneys represents the claimant or claimants or is entitled to the attorneys' fees, or a division of attorneys' fees where the claimant or claimants are or have been represented by more than one attorney, or any other disputes concerning attorneys' fees or contracts for attorneys' fees, shall be heard and determined by the Commission after reasonable notice to all interested parties and attorneys." 820 ILCS 305/16a(J) (West 2012).

¶ 17    Reading these provisions together, we determine that the Commission has the authority to set the amount of fees that should be awarded to attorneys who represent claimants in claims filed with the Commission and to resolve disputes regarding the amount of those fees. This authority does not extend to issues concerning a breach of a referral agreement delineating the percentage of the awarded fee that should be allotted to the attorney who represented the claimant before the Commission and the attorney who referred the claimant to that attorney.

¶ 18    In reaching this result, we observe that section 16 indicates that the Commission has the power to determine the amount of fees that should be awarded to an attorney who represented a claimant in a case that was brought before the Commission. Under section 16a(C), an attorney who represents a claimant in an action brought before the Commission must file with the Commission a written contract, executed between the attorney and the claimant or the claimant's dependents, which must fix the amount of fees to which that attorney is entitled. Section 16a(J) reveals that, when there is a dispute concerning the fees, that dispute should be brought before the Commission.

¶ 19    Although section 16a(J) refers to "[a]ny and all disputes regarding attorneys' fees" (*id.*), we cannot conclude that, by this language, the Act confers on the Commission the authority to resolve a case concerning the breach of a referral agreement in a workers' compensation case. "When the plain language of two statutes conflicts, [a reviewing court] will attempt to construe them together, *in pari materia*, if such an interpretation is reasonable." *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). "Legislative intent remains the foremost consideration, however." *Id.* "In determining that intent, [reviewing courts] may consider the statutes in their entirety, their purposes, the problems they target and the goals they seek to achieve." *Id.* In doing so, "[w]ords and phrases should not be interpreted in isolation, but must be construed in light of other relevant provisions of the statute." *Id.* at 333.

¶ 20    Here, reading all of the relevant parts of the Act together, we determine that, when the legislature used the phrase "[a]ny and all disputes regarding attorneys' fees," it was referring to disputes concerning the amount of fees to be awarded to those who represent clients before the Commission (see 820 ILCS 305/16a(J) (West 2012)). If we were to say that section 16a(J) gave the Commission jurisdiction over the breach of the referral agreement at issue in this case, we would be ignoring not only the specific power that section 16 grants to the Commission, but also the legislative intent of section 16a. That is, the legislature explicitly stated in section 16a(A) that the purpose of section 16a is to handle workers' compensation claims expeditiously so that a claimant may recover more of the amount of compensation awarded. If

- 6 -

we were to hold that section 16a(J) allowed the Commission to resolve the breach of the referral agreement in this case, that purpose would be thwarted, as resolving that issue would take more time and potentially deplete more of the award given to the claimants.

¶ 21    Defendant argues that the Commission had jurisdiction over this case, because (1) plaintiff asserted in its complaint that it and defendant were to act as "co-counsel," (2) referring the claimants to defendant was a "service" as provided in the Act; and (3) the Act dictates how referral agreements in workers' compensation cases are to be executed. We find none of these arguments availing.

¶ 22    First, the mere fact that plaintiff referred to the parties as "co-counsel" in its complaint does not mean that they were, in fact, co-counsel before the Commission. Indeed, the documents attached to plaintiff's complaint reveal that the parties were not co-counsel before the Commission. That is, according to these documents, defendant agreed that he would "[r]epresent the client[s] before the Industrial Commission and *** conduct any investigation, negotiations, and processing necessary to bring this claim to a conclusion." In contrast, plaintiff was to perform many ancillary tasks, like providing translation services, assisting with initial interviews, and keeping duplicate records in its office. When the Act uses the phrase "any fee of compensation charged by any person, including attorneys" (820 ILCS 305/16 (West 2012)), it means fees charged for performing services like filing the claim, representing the claimant before the Commission, and attempting to settle the claim, as such acts would be "service[s] performed in connection with this Act" (820 ILCS 305/16 (West 2012)). The services that plaintiff provided do not fall within this category.

¶ 23    Second, and similarly, referring clients to another attorney is not a "service" as that term is used in the Act. Reading all of the provisions of the Act together, it is clear that, when the Act refers to "service," it means work done on the claim itself. Here, the parties agreed that defendant would prosecute the claim. That is, the parties agreed that defendant would provide "service" under the Act. The value of that "service" could have been an issue for the Commission, but whether plaintiff was owed a fee for referring the claimants to defendant for "service" was not.

¶ 24    Third, while the Act does provide guidance for how referral agreements for workers' compensation cases should be executed (see 820 ILCS 305/16b(a) (West 2012); Ill. R. Prof. Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010)), we cannot conclude, as defendant suggests, that the Commission thus has jurisdiction over the breach of a referral agreement. Beyond the reasons set forth above, we fail to see why the Commission would be inserted into a dispute concerning a referral agreement executed by two attorneys. In contrast, it is quite clear why the Commission would be involved in setting reasonable fees that an attorney may charge a claimant, as, unlike two attorneys executing a referral agreement, an attorney and a claimant are not similarly situated and the Commission is well placed to ensure that any agreement reached between these parties is not unconscionable. See 820 ILCS 305/16 (West 2012) (providing that the Commission has the power to determine the reasonableness and fix the amount of fees an attorney charges in representing a claimant).

¶ 25    For these reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 26         Affirmed.